LOUIS ACKERMAN *et al.*

*v.*

CHARLES J. HAENCK *et al.*

*Filed at Ottawa October 26, 1893.*

1. SCHOOL ELECTION—*fixing the time for holding.* The law fixes the time when an election shall be held for the election of president and members of boards of education, and requires the president and clerk of the board to give ten days' notice of the election, which shall specify the place of holding the election and the time of opening and closing the polls. The statute does not require the board of election to make an order providing for the election.

2. As the law fixes the date of election, and requires the president and clerk of the board of education to give notice of the election, the fact that an order of the board fixing the time, and requiring notice to be given, may have passed by less than a quorum of the board, will not vitiate an election held in pursuance of such order.

3. It is within the power of the board of education, acting through its president and clerk, to prescribe such reasonable time for the opening and closing the polls of an election for members of the board, as may best suit the convenience of the voters of the district.

4. SAME—*avoiding—for irregularities in conducting.* Irregularities in conducting a school election, such as a failure to make proclamation before the polls are closed, and a failure to deliver the ballots, after being counted, to the township treasurer, which in no way affect the result of the election or deprive any voter of his right to vote, and are not the result of fraud or improper motives, will be no ground for setting aside the election or declaring it void.

5. The fact that the jurat to the oaths of the judges and clerks of a school election may have been informal, and that other irregularities may have occurred which do not affect the result, will afford no sufficient ground for contesting such election.

6. SAME—*naturalization of the judges.* On the contest of the election of school officers, a certificate of naturalization of one of the judges of the election, granted by a court of competent jurisdiction, can not be called in question on the ground of alleged error in the court granting the same.

7. SAME—*women voting.* Women above the age of twenty-one years are qualified voters at an election of president and members of a board of education.

APPEAL from the County Court of Bureau county; the Hon. ROBERT R. GIBSON, Judge, presiding.

At an election held on the 16th day of April, 1892, at Spring Valley, in Bureau county, in district No. 3, for the purpose of electing a president of the board of education, and two members of the board for three years and one member for two years, as appears from the returns, C. J. Haenck was elected president, and Peter Lauer, P. J. O'Brien and Thomas Dyer were each elected members of the board. The votes received by the respective candidates were as follows: For president: C. J. Haenck 866, S. M. Dalzell 652; for members, three years: Peter Lauer 869, P. J. O'Brien 752, M. Murphy 120, L. Ackerman 651, George Marco 649; for members, two years: Thomas Dyer 863; J. B. Nelson 651.

After the result had been declared, Louis Ackerman and ten other residents of the school district filed a petition in the county court of Bureau county to contest the election. The petitioners alleged in the petition eleven grounds upon which they relied to contest the election. The first, second and third grounds alleged were, that the defendants did not receive a majority of the legal votes cast, and that their competitors did receive a majority of the legal votes. The fourth is to the effect that no legal declaration of the result of said election was declared by the board of election. The fifth is to the effect that six hundred and ten women voted for the defendants. The sixth is to the effect that the contestees did not receive a plurality of the legal votes cast at such election. The seventh is to the effect that the out-going board of education did not receive any oaths of office from the in-coming members. The eighth is to the effect that the newly elected members of the board did not take any oath of office before entering upon the discharge of their duties. The ninth is to the effect that the election board received illegal votes. The tenth is to the effect that the election board refused to receive

legal votes. The eleventh is to the effect that the election board knowingly and willfully received such illegal votes and refused to receive legal votes. The defendants put in an answer to the petition, in which all the material allegations relied upon by the petitioners were denied.

During the progress of the trial the petitioners obtained leave to amend their petition, by inserting immediately following a prayer for relief, the following: "All of which proceedings, actings and doings, and the holding of the pretended election aforesaid, were from first to last illegal, fraudulent and void, and contrary to the statute in such case made and provided; and if it shall appear to the court that said election of the said president and members of said board of education of said school district is illegal and void, and contrary to the statute in such case made and provided, the said contestants pray that said election of said persons above named be so declared, and that the election be set aside and for naught held."

Mr. JOHN L. MURPHY, for the appellants.

Mr. A. R. GREENWOOD, and Messrs. ECKELS & KYLE, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The petitioners did not attempt to prove, on the trial, that the defendants did not receive a majority of the legal votes cast at the election, nor did it appear from the evidence that there was any fraud or unfairness on the part of the judges or clerks in conducting the election, but the petitioners, as we understand the argument of their counsel, seek to defeat the election of the defendants by proving that irregularities occurred in calling and conducting the election, and in canvassing the votes and declaring the result.

The board of education consisted of a president and six members. On the 26th day of March, 1892, the board met, and as appears from its record, transacted business as follows:

"Meeting of board of education of March 26, 1892.

"Members present: Pres. W. P. Lyndon, Moran, Hercer, Skelly.

"On motion, the seat of D. Throno Vola declared vacant.

"Moved that board of education call an election for April 16, 1892, to elect president and members, etc. The president appointed Lyndon and Moran judges of said election, and Hercer and Skelly clerks. Adjourned."

The following notice of election was posted, as required by the statute, and also published in a newspaper published in Spring Valley:

"*Notice of election.*—Public notice is hereby given, that on Saturday, the 16th day of April, A. D. 1892, an election will be held at the brick school house in block 27, Spring Valley, Illinois, between the hours of one P. M. and seven P. M. of said day, for the purpose of electing a president of the board of education, and two members of said board to fill vacancies for a term of three years and one member to fill an unexpired term of two years, of district No. 3, town 16, range 11, Hall town.

"Dated this 31st day of March, 1892.

W. P. LYNDON, *Pres.*
JOSEPH HERCER, *Clerk.*"

It will be observed that only three of the members of the board of education, and the president of the board, were present when a motion was adopted "that board of education call an election, to be held April 16, 1892, to elect a president and members of the board," and it is claimed in the argument that no quorum was present, and hence the order providing for the election was void. Section 5 of article 6 of the School laws of 1889, page 303, provides that the annual election of members of the board of education shall be on the third Saturday in April, when one-third of the members shall be elected for three years, and until their successors are elected and qualified. Section 6 provides that "notice of such

election shall be given by the board of education ten days previous to the election, by posting notices in three of the most public places in the district, which shall specify the place where such election is to be held, the time of opening and closing the polls,   *   *   *   which notice may be in the following form." Then follows a form for the notice, to be signed by the *president* and *clerk* of the board. Section 7 provides: "In case of a failure to give the notice above provided for, such election may be held on any Saturday after such notice has been given as aforesaid."

It will be observed that the law provides the time when the election shall be held, and requires the president and clerk of the board to give ten days' notice of the election, which shall specify the place of holding the election and the time of opening and closing the polls, but we find no section of the act which requires the board to make an order providing for the election. If, therefore, the order providing for the election was passed by less than a quorum, as is contended, that irregularity did not render the election void, as the law fixes the date of election. All that seems necessary is for the president and clerk of the board, in their official capacity, to give proper notice. This seems more manifest from the language of section 7, which in plain terms declares, in case of failure to give notice of the annual election such election shall be held on any Saturday after such notice has been given. The order for the election was nothing more than a direction to the president and clerk of the board to do what it was their duty to do under the statute, and whether it was properly passed or not could not affect the validity of the election held in pursuance of the notice given.

. Objection is also made to the election because the polls were not open until one o'clock P. M. Section 8 of article 6 of the act provides that the election shall be conducted in the same manner and be governed by the provisions of the act relating to the election of boards of directors, and section 8

of article 5, relating to boards of directors, provides that "notice of all elections shall be given by the directors, &ast; &ast; &ast; and said notices shall specify the place where such election shall be held; the time of opening and closing the polls." It was thus within the power of the board, acting through its president and clerk, to prescribe such reasonable time for the opening and closing of the polls as might best suit the convenience of the voters of the district.

It is also claimed that Moran, one of the members of the board of education, was not a naturalized citizen of the United States, and hence was not authorized to act as one of the judges of election in the school district. Moran had obtained a certificate of naturalization from a court of competent jurisdiction, and that was all that could be required. Whether the court before whom he was naturalized erred in granting him a certificate, is a question which can not be inquired into in this case.

It is also claimed that the judges and clerks of the election were not sworn before entering upon the discharge of their duties. The evidence in the record shows that they were all sworn. The jurat to the oath may have been informal, or other irregularities may have occurred, but, as we shall attempt to show hereafter, they did not affect the result.

It is also claimed that six hundred women were allowed to vote, and under the constitution and laws they were not legal voters. Under the law as declared by this court in *Plummer* v. *Yost,* 144 Ill. 68, the women who voted for members of the board of education and president of the board were qualified voters.

It is also claimed that the judges of election failed to make proclamation thirty minutes before the polls closed; that after the ballots were counted they were not delivered to the township treasurer, as required by law, and other irregularities of a similar character are complained of. But we shall not stop to refer to each of the objections in detail. There

were, no doubt, irregularities in the election, but so far as we are able to discover, after a careful examination of the record, the irregularities complained of in no manner affected the result of the election. Nor does the record show that those in charge of the election were actuated by improper motives or fraud. Under such circumstances no ground exists for setting aside the election or declaring it void. Similar questions arose in *Behrensmeyer* v. *Kreitz*, 135 Ill. 591, and it was held, the provisions of the statute as to the manner of conducting the details of an election are not mandatory, but directory, and irregularities in conducting an election and counting the votes, not proceeding from any wrongful intent, and which deprive no legal voter of his vote and do not change the result, will not vitiate the election. The rule indicated in the case cited is conclusive of the irregularities complained of here.

The judgment of the county court will be affirmed.

*Judgment affirmed.*