In re INSPECTORS OF ELECTION.

In re BENJAMIN.

(Supreme Court, Special Term, Suffolk County. November 1, 1893.)

SCHOOL ELECTIONS—WOMEN'S RIGHT TO VOTE—CONSTITUTIONAL LAW.
In providing for the election of school commissioners, under Const. art. 10, § 2, declaring that officers whose offices are created by law after the adoption of the constitution "shall be elected by the people or appointed, as the legislature may direct," the legislature has no power to allow women to vote, as Const. art. 2, § 1, restricts the right to vote to certain classes of male citizens.

Application for an order directing the inspectors of election in district No. 3 of the town of Riverhead, in the county of Suffolk, to strike from the list of voters the name of Ernestine Benjamin. Granted.

Benj. K. Payne, for applicant.
George F. Stackpole, for respondent.

BARTLETT, J. This is a proceeding under section 37 of the election law (Laws 1892, vol. 2, c. 680) to have the name of an unmarried woman stricken from the registry of voters, upon two grounds: First, that she does not possess the qualification prescribed by the act of 1892, empowering women to vote for school commissioners; and, secondly, that the act of 1892, so far as it assumes to authorize women to vote for school commissioners, is in conflict with the constitution of the state. The constitutional objection may be considered first, inasmuch as it disposes of the other question, if it be sustained. School commissioners were formerly chosen by the boards of supervisors of the several counties of the state. Laws 1856, c. 179. Under the existing law, however, they are elective by the people. The statute provides that "the school commissioner for each school commissioner district shall be elected by the electors thereof by separate ballot, at the general election in the year one thousand eight hundred and sixty-six and triennially thereafter, and the ballots shall be indorsed 'school commissioner.'" Laws 1864, c. 555, as amended by Laws 1867, c. 406. Section 2 of article 10 of the constitution contains three provisions as to the methods of choosing public officers whose election or appointment is not provided for by the constitution itself: First. As to county officer. These "shall be elected by the electors of the respective counties or appointed by the boards of supervisors, or other county authorities, as the legislature shall direct." Second. As to city, town, and village officers. These "shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the legislature shall designate for that purpose." Third. As to all other officers whose election or appointment is not provided for by the constitution, and all other officers whose offices might be created by law after the adoption of the constitution. These "shall be elected by the people or appointed, as the legislature may

direct." This section was in the constitution when that instrument was adopted in 1846. The office of school commissioner was subsequently created by law. It has been held that "the officers and offices designated or intended in the first two sentences of the section are those instituted and existing under actual laws of the state at the time of the adoption of the constitution, and that those embraced in the last clause are all officers of every description, both local and general, whose offices were to be thereafter created by law." People v. Pinckney, 32 N. Y. 381. It follows that school commissioners, who come within the class of officers whose offices have been created by law since the constitution of 1846 went into effect, must be chosen in the manner prescribed by the last clause of section 2 of article 10. They must either be "elected by the people, or appointed, as the legislature may direct." The constitution thus presents to the legislature the alternative of an election by the people, or an appointment by some constituted authority, as the only method of selecting school commissioners. The plain intent of the framers of the constitution was that all officers whose offices should be created after the adoption of that instrument should derive their title from the people, either directly, by popular election, or indirectly, by appointment at the hands of persons in authority. Where the legislature bestowed the power of appointment upon an organized body of officers, as, for example, a board of supervisors, it might very well be that it should be spoken of as an authority to elect, but it would be none the less a power to appoint in the sense of the constitution. The essential element of an appointment under the constitution, as I understand it, is that it shall come from some person or body of persons already possessing some sort of authority; while an election by the people is a selection by those persons who are qualified voters under the constitution, but who act in no official capacity whatsoever in making such selection.

Now, the legislature certainly has not provided for the appointment of school commissioners by any constituted authority, in the existing statutes relating to such officers. It has said that they "shall be elected by the electors of the school commissioner districts." Laws 1864, c. 555, as amended by Laws 1867, c. 406. In such election the legislature of 1892 has endeavored to allow women to participate, by the enactment of chapter 214 of the Laws of that year, providing that all persons, without regard to sex, shall have the right to vote for school commissioners. There has been no attempt to make the office appointive. The legislature has made it an elective office, to be filled by popular vote, and then has gone further, and declared that persons other than those who are qualified electors under the constitution shall be entitled to participate in the election. This, I think, is beyond the constitutional power of the legislature. Where officers are to be elected by the people, in the sense in which that phrase is used in the constitution of New York, no one is entitled to vote except such persons as are mentioned in section 1 of article 2 of that instrument; that is to say, no one who is not a male citizen. "The constitution

of this state," said Davies, J., in the case of People v. Plase, 27 N. Y. 52, 53, "declares who may exercise the elective franchise. Those entitled to vote at any election are every male citizen of the age of twenty-one years who shall have been a citizen for ten days and an inhabitant of this state for one year next preceding any election, and for the last four months a resident of the county where he may offer his vote. Section 1, art. 2. It follows that none others than those possessing these qualifications can lawfully vote." The constitution, in article 2, § 1, "specified the qualification necessary to the elective franchise," said the court of appeals, speaking through Danforth, J., as recently as 1887, in the case of Silvey v. Lindsay, 107 N. Y., on page 59, and 13 N. E. Rep, on page 445. In 1888 this provision of the constitution came up for consideration before the general term of the supreme court, in the fifth department, in the case of People v. Barber, 48 Hun, 198, which was argued before four judges, two of whom have since sat in the second division of the court of appeals. In a unanimous opinion, they declared that the section of the constitution defining the qualification of voters required no legislation to give it effect, and they declined to adopt the view of the counsel for the defendant that persons not designated in that section were not excluded from the right to vote, saying:

"The view thus contended for would render the provision substantially nugatory, except as a guaranty to those so designated against disfranchising legislation, and lead to the conclusion that, while it declares that male citizens of the requisite term of citizenship, inhabitancy, and residence are entitled to vote at elections, it has the effect to exclude none from the exercise of the elective franchise, and that no persons are denied such right other than such as may come within the second section of that article, and those who may by statute be disqualified."

The court rejected this conclusion, being of the opinion—

"That the provisions of section 1 of article 2 before referred to would have the effect to exclude from the exercise of such right all persons not embraced within it, notwithstanding the fact that the legislative power of a state is not derived from its constitution, but is merely limited and qualified by it, because, having designated the persons who are entitled to vote at elections, the provision in that respect has the effect to negative the right of the elective franchise to all others, and the maxim 'expressio unius est exclusio alterius' is applicable to its construction."

The same rule, to the effect that a prohibition against legislative interference is to be implied from a constitutional declaration as to the conditions under which a right is to be exercised, has been laid down in other states. "It has always been understood," said the supreme court of Pennsylvania, in the case of McCafferty v. Guyer, 59 Pa. St. 111, 112, "that the legislature has no power to confer the elective franchise upon other classes than those to whom it is given by the constitution, for the description of those entitled is regarded as excluding all others." And in another case Chief Justice Thompson, of the same court, used this language: "No constitutional qualification can in the least be abridged, added to, or altered, by legislation or the pretense of legislation. Any such action would necessarily be void and of no effect." Page v.

Allen, 58 Pa. St. 347. In Kansas, also, it has been held that the right to vote for county superintendents of public instruction could not be exercised by women, inasmuch as the constitution of that state, in declaring who should be deemed qualified electors, mentioned only male persons. Winans v. Williams, 5 Kan. 227.

As has already been pointed out, the legislature has not assumed or attempted in the statutory provisions now in force to provide for the appointment of school commissioners. It has sought to provide for their election by the people. In such an election it cannot permit any persons to take part except such as are qualified voters under the constitution. These are male citizens only. Article 2, § 1. That portion of the act of 1892, therefore, which assumes to confer upon women the right to vote for school commissioners, must be deemed invalid. This conclusion renders it unnecessary to consider the other objection to Miss Benjamin's claim to vote, based upon the idea that only women who were qualified to vote under the statute relating to school meetings were qualified to vote for school commissioners, under the act of 1892. Assuming, as I do, that it is desirable that women should be allowed to vote at general elections for these officers, I am satisfied that they can be authorized to do so only by an amendment to the state constitution. The application to strike the name of Ernestine Benjamin from the list of voters in the third district of Riverhead must be granted.