### WARRENER v. LAMBRECHT et al.

(Court of Civil Appeals of Texas. Galveston. March 29, 1912. Rehearing Denied April 18, 1912.)

1. MUNICIPAL CORPORATIONS (§ 51*)—ABOLITION OF CORPORATE EXISTENCE—ELECTION — QUALIFIED VOTERS — "ASSESSMENT ROLL."

Rev. St. 1895, art. 617c, provides that at an election relating to the abolition of the corporate existence of a town all persons may vote who are legally qualified voters of the state and county in which such election is ordered, and resident property taxpayers in the city or town where such election is held, as shown by the last assessment roll. Rev. St. 1895, arts. 5120, 5127, provide that the commissioners' court shall make up an assessment roll from the list rendered by assessors, and return the list to the assessors for making up the general rolls. The town assessors made up a tax roll, compiled from the county assessor's rolls, which was adopted by the council, and thereafter they made assessments, shown by assessment lists, against residents who had rendered property for taxation, but whose names were not on the tax roll. *Held*, that the assessment list was not an "assessment roll," within the meaning of the statute; and hence that such residents were not qualified voters, and their votes were properly refused.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. § 51.*

For other definitions, see Words and Phrases, vol. 1, p. 556.]

2. MUNICIPAL CORPORATIONS (§ 51*)—ABOLITION OF CORPORATE EXISTENCE—ELECTION CONTEST—BURDEN OF PROOF.

The contestant of an election in a town, relative to the abolition of its corporate existence, on the ground that certain qualified voters were denied the right to vote, has the burden of proving that they were qualified.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. § 51.*]

3. MUNICIPAL CORPORATIONS (§ 51*)—ABOLITION OF CORPORATE EXISTENCE—QUALIFICATION OF VOTERS.

Under the express provisions of Const. § 2, as amended in 1902, and Rev. St. 1895, art. 617c, a resident of an incorporated town was not qualified to vote at an election, relative to the abolition of its corporate existence, unless he was a citizen of the United States, or had, at a proper time before the election, declared his intention of becoming a citizen, and unless he had paid his poll tax before the 1st day of February next preceding the election.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. § 51.*]

Appeal from District Court, Harris County; Charles E. Ashe, Judge.

Suit by S. K. Warrener against Nick Lambrecht and another to contest an election. Judgment for defendants, and plaintiff appeals. Affirmed.

G. W. Tharp, of Houston, for contestant. R. H. Holland and S. H. Brashear, both of Houston, for contestees.

McMEANS, J. S. K. Warrener brought this suit to contest an election, held in the town of Humble, Harris county, to determine whether the corporate existence of said town should be abolished. The defendants were Nick Lambrecht, who was the presiding judge at the election, and A. E. Amerman, the county judge of Harris county.

It was alleged in the petition that on the 7th day of November, 1911, an election was had in the town of Humble, for the purpose of determining whether or not the corporate existence of the town should be abolished; that 19 persons (naming them) offered to vote, but were denied the privilege of voting by Lambrecht, the presiding judge; that all of said persons were legally qualified voters of Harris county, and had resided in the town of Humble for six months prior to the date of the election, and were resident property taxpayers in said town, as shown by the last assessment roll of said town, and were qualified to vote in said election; that each of the said 19 persons, had they been allowed to vote, would have voted against abolition, and that, by reason of the refusal of the presiding judge to permit them to vote, the election went in favor of abolition; that, by reason of the facts stated, the election was fraudulent and void. Petitioner prayed for temporary injunction to restrain A. E. Amerman, county judge, from canvassing the returns of election and from announcing the result during the pendency of the contest, and that upon final hearing the election be declared void. Both defendants answered; but the allegations of their answers are not material to the issue presented here. The case was tried before the court, without a jury, and resulted in a judgment for defendants, from which plaintiff has appealed.

Appellant's only assignment of error, which is submitted as a proposition, is as follows: "The court erred in rendering judgment for the contestees and against contestant, because the evidence conclusively shows that at an election held on November 7, 1911, in the town of Humble, to determine whether or not the corporation of said town should be dissolved, 19 qualified voters offered to vote, and were refused the privilege of voting by the presiding judge; that all of said qualified voters, who offered to vote, would have voted not to abolish the corporation, had they been permitted to vote, and thereby the result of the election would have been changed; hence the judgment of

the court should have been for contestant."

[1] The only question to be decided on this appeal is whether the 19 persons who offered to vote at the election in question were qualified voters, within the meaning of article 617c of chapter 12, tit. 18, of the Revised Statutes of 1895, relating to the abolition of the corporate existence of municipal corporations. The evidence, while vague in many particulars, is without dispute. The town of Humble was incorporated December 20, 1910. On October 2, 1911, the town council appointed an assessor of taxes and defined his duties, but, up to the time of the election held to determine whether the corporation should be abolished, had not created a tax or levied an assessment upon property within the corporate limits. The minutes of the council show that on October 7, 1911, the "board of appraisers had completed the work of appraisement; that the tax roll, compiled from the county tax assessor's roll, was approved and adopted by unanimous vote, and the assessor was instructed to finish assessing at an early date." It was shown that the "list from the county assessor's roll was compiled simply to assist the (town) assessor in making up the rolls." On November 6, 1911, the council passed an ordinance closing the tax rolls, in order to give the town tax assessor "the necessary time to compile the same."

It is inferable that after the adoption of the tax roll compiled from the county assessor's assessment roll the tax assessor, in obedience to the order of the council "to finish assessing at an early date," proceeded to assess other persons whose names did not appear on the list compiled from the rolls of the county assessor, taking their assessments on regular assessment sheets, but that these assessments, and the names of the persons so assessed, did not appear on the assessment roll compiled from the county assessor's roll at the time they offered to vote at the election in question, or upon any assessment roll whatever. The assessment roll made up from the county assessor's roll was introduced as evidence, and admitted by all parties to be the assessment roll of the town of Humble. This precludes any inquiry by us as to whether this roll was an "assessment roll," within the meaning of article 617c, referred to above.

It was shown that at the election in question the names of the persons who were allowed to vote appeared on this assessment roll, and that of these 28 voted in favor of abolition and 18 against, and that, if the 19 persons who offered, but were not permitted, to vote had voted, each would have voted against abolition, and thereby the result of the election would have been against abolition.

Article 617c, prescribing the qualification of voters at an election, such as the one in question, is as follows: "All persons who are legally qualified voters of the state and county in which any such election is ordered, and are resident property tax-payers in the city or town where such election is to be held, as shown by the last assessment roll of such city or town, shall be entitled to vote at such election," etc.

The appellant, in order to show that each of the 19 persons was qualified to vote in said election, placed each one on the stand, and each testified that he had resided in the town of Humble for more than six months prior to the day of election and in the state of Texas for more than a year prior to said date, and that he was a property owner in the town of Humble, and had paid his poll tax for the year 1910. In addition to this, the original assessment sheets were also introduced, showing that each of the 19 persons, after the above-mentioned assessment roll had been adopted by the council, and prior to November 6, 1911, had rendered for taxation property in the town of Humble for the year beginning January 1, 1911.

We think that under the foregoing facts the court did not err in rendering judgment for the appellees.

The appellant's contention that the assessment lists, which contain merely an inventory of the property owned by the person assessed, are the assessment roll contemplated by the statute is untenable. One is merely a list of the property owned by the taxpayer, and the other is the roll which is made up in the manner required by law from the whole number of such lists rendered to him by the property owners. Articles 5120, 5127, R. S. We think that the Legislature, in adopting the statute above quoted, in using the words "as shown by the last assessment roll," had in mind the distinction between "lists" and "rolls," as recognized by the articles last referred to, and intended that persons otherwise qualified should not vote, unless it appeared from the last assessment roll that they were resident property taxpayers of the town where the election was to be held. The Legislature could have provided, of course, that any resident property taxpayer should have the right to vote at such election, and have left it to the voters or to the presiding judge to determine in any proper way who were thus qualified; but this the Legislature did not do, but prescribed, as a condition precedent to the right to vote, that the assessment roll, and it alone, should determine whether the voter who presented himself and claimed the privilege was a resident property taxpayer of the town where the election was held. As the assessment lists did not constitute the assessment roll, and as the 19 persons who were not permitted to vote did not show, in the manner provided by law, that they were qualified to vote, the presiding judge, we think, acted within the law in refusing to receive their ballots. To decide otherwise would be to read into the

law, we think, a meaning and give to it a construction that its language does not seem to warrant.

[2, 3] But, even if we are in error as to this, we are of the opinion that the 19 persons who offered to vote, but were denied the right, were not shown upon the trial to be qualified voters. It was proved by each of them that he had resided in the state of Texas one year and in Harris county six months, and that he had paid his poll tax for the year 1910. As before shown, the election was held November 7, 1911. It was a necessary qualification that each voter should be a "legally qualified voter of the state and county" where he offered to vote, in addition to his being a property taxpayer, as shown by the assessment roll; and the burden of proof to show such facts rested upon the contestant. Section 2 of the Constitution, as amended in 1902, prescribing the qualification of a voter, in addition to the requirement that he shall have resided in the state one year and in the county six months, provides that he must have attained the age of 21 years, be a citizen of the United States (unless of foreign birth, in which event he must have declared his intention to become a citizen of the United States in accordance with the federal naturalization law), and must have paid his poll tax and hold a receipt therefor, showing the same to have been paid before the 1st day of February next preceding the election. We think the proof offered at the trial falls short of showing that the 19 persons possessed all these prescribed qualifications. It may be the fact that each had paid his poll tax for 1910 was sufficient to establish that each was 21 years of age; but the proof was wholly insufficient to show that each was a citizen of the United States, or, if of foreign birth, had, at a proper time before the election, declared his intention to become a citizen, and that he had paid his poll tax before the 1st day of February next preceding the election in question. The record discloses no reversible error; and the judgment of the court below is affirmed.

Affirmed.