**BONHAM et al. v. FUCHS et al. (No. 8036.)**

(Court of Civil Appeals of Texas. Galveston. Jan. 13, 1921. Rehearing Denied Feb. 10, 1921.)

1. **Municipal corporations ⬤⇒51—Statute limiting to taxpayers right to vote at election on abolition of corporate existence not invalid.**

Const. art. 6, § 2, giving the right of suffrage, with certain restrictions and exceptions, to all persons not disqualified under section 1, does not apply to municipal elections, in view of section 3; and hence Vernon's Sayles' Ann. Civ. St. 1914, art. 1079, providing that at an election on the question of abolishing the corporate existence of a municipality only resident property taxpayers may vote, is not invalid.

2. **Constitutional law ⬤⇒48—Statute not held void unless clearly contrary to Constitution.**

An act of the Legislature should not be held void by the courts unless it clearly violates some express or necessarily implied provision of the Constitution.

3. **Statutes ⬤⇒64(4)—Invalidity of provision requiring voter's name to appear on last assessment roll held not to invalidate statute prescribing qualifications.**

If the provision of Vernon's Sayles' Ann. Civ. St. 1914, art. 1079, that, at an election

as to abolishing the corporate existence of a municipality, all legally qualified voters, who are resident taxpayers, "as shown by the last assessment roll," shall be entitled to vote, is invalid, its invalidity does not destroy the entire statute.

**4. Municipal corporations ☞51—Petition to contest election on abolition of corporate existence held not demurrable.**

In a proceeding to contest an election on the question of abolishing the corporate existence of a municipality, a petition alleging that challenged voters were not taxpayers was not subject to demurrer, even though the provision of Vernon's Sayles' Ann. Civ. St. 1914, art. 1079, requiring the names of voters to appear on the last assessment roll, was invalid.

**5. Municipal corporations ☞51—Statute requiring names of voters to appear on last assessment roll not invalid.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 1079, requiring the names of voters at an election on the question of abolishing the corporate existence of a municipality to appear on the last assessment roll, is not invalid.

Graves, J., dissenting.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Proceeding by F. C. Bonham and others against E. E. Fuchs and others. From a judgment dismissing the suit, plaintiffs appeal. Reversed and remanded.

Van Velzer & York, of Houston, and T. S. Johnson, of Austin, for appellants.

Jones & Jones, of Houston, for appellees.

PLEASANTS, C. J. This is a proceeding, under the statute, contesting an election held in the city of West Houston, Harris county, on the 4th day of May, 1920, to determine whether the corporation should be abolished.

The returns of the election show that the proposition to abolish the corporation received a majority of 24 out of a total of 180 votes.

One of the grounds upon which this result is contested is that 63 of the voters at the election whose votes were received and counted in favor of abolishing the corporation—

"were not qualified or entitled, under the laws of the state of Texas, to vote at said election, as the last assessment roll of said city of West Houston before said election, being for 1919, does not show them to be, and none of them are, listed as resident property taxpayers in said city of West Houston, where such election was held, and none of said voters paid a tax on property in said city for the year 1919, and do not pay tax on property therein, and are not taxpayers, and were not taxpayers when said election was held, but their votes were cast and counted at said election."

A general demurrer interposed by defendants to plaintiffs' petition was sustained by the trial court, and, plaintiffs declining to amend, their suit was dismissed.

The trial judge in sustaining the general demurrer gave the following reasons for his ruling:

"The action of the court in sustaining this general demurrer is based on the belief of the court that so much of the statute contained in article 1079, Vernon's Sayles' Revised Statutes, as requires the name of the voter to be shown by the last assessment roll of a city or town as a prerequisite of the right to vote, is in conflict with article 6, §§ 2, 3.

"The Constitution of the state of Texas provides that all male persons not subject to certain named disqualifications shall be permitted to vote in all elections. It is conceded that in this election a prospective voter shall be a resident property taxpayer in the city or town where such election is to be held; and it is contended on the part of the contesting plaintiffs that the words 'as shown by the last assessment roll' of such city or town should be given effect by the court in considering their petition and the evidence which they seek to introduce in support of it.

"Courts have been very jealous of any effort to restrict the suffrage of citizens, and the Constitution having enumerated those restrictions, including the necessity for a poll tax or affidavit in lieu of a poll tax, it would seem that the Legislature is without authority to add additional restrictions or qualifications, or to provide for a procedure which would have that effect. Not only is it without specific authority to enact such a qualification or restriction, but so much of the statute as requires the name of the voter or the fact of the voter's qualification to be shown by the last assessment roll is contrary to the purpose and spirit of the Constitution and cannot be given effect."

Under appropriate assignments of error appellants challenge the ruling of the trial court sustaining the demurrer, and contend that article 1079, Vernon's Sayles' Statutes, prescribing the qualifications of voters at elections held for the purpose of determining whether the corporation of a city or town, incorporated under the general incorporation statute, should be abolished, is not in conflict with sections 2 and 3, art. 6, of the Constitution of this state. The statute cited provides:

"All persons who are legally qualified voters of the state and county in which any such election is ordered, and are resident property taxpayers in the city or town where such election is to be held, as shown by the last assessment roll of such city or town, shall be entitled to vote at such election."

Article 6 of our Constitution, giving the right of suffrage, declares, first, in section 1, what class of persons shall not be permitted to vote in this state; and by sections 2 and 3 confers the right of suffrage, with certain restrictions and exceptions, upon all persons in this state not included in any of the classes named in section 1. Section 2 pre-

scribes the general qualifications of an elector in this state. Section 3 provides:

"All qualified electors of the state, as herein prescribed, who shall have resided for six months immediately preceding an election within the limits of any city or corporate town, shall have the right to vote for mayor and all other elective officers; but in all elections to determine expenditure of money or assumption of debt, only those shall be qualified to vote who pay taxes on property in said city or incorporated town."

[1] The majority of this court cannot agree with the learned trial judge that these provisions of the Constitution can be construed as prohibiting the Legislature from prescribing that, in elections held to determine whether the corporation of a city or town should be abolished, only persons who are property taxpayers in the city or town shall be allowed to vote, nor from further providing the rule by which the election officers are to determine whether the person who offers to vote at such an election is a taxpayer in the city or town.

Such inhibition is attempted to be read into these provisions of the Constitution by the application of the rule, expressio unius est exclusio alterius. This rule, which is never infallible, and, in the opinion of the writer, is rarely a safe one to follow in constitutional construction, cannot be applied to these provisions of the Constitution.

We think that section 3, above quoted, shows upon its face that the makers of the Constitution did not intend by the provision of section 2 of this article to confer and regulate the right of suffrage in municipal elections in cities and towns, because, if section 2 confers such right, the first clause of section 3, giving the right to all qualified electors of the state having the prescribed residence in the city or town in municipal elections held for selecting municipal officers, was a wholly unnecessary provision, and would not have been incorporated in that section. In addition to this, the use in section 3 of the words "qualified electors of the state" indicates that the previous section was only intended to confer and regulate the right of suffrage in general elections affecting the state as a whole.

If this interpretation is sound, it is just as apt and reasonable an application of the rule "that the expression of the one is the exclusion of the other" to hold that, by giving the right of suffrage in municipal elections for municipal officers to all qualified electors of the state who have resided in the municipality six months next preceding the election, the makers of the Constitution meant to deny to such electors the right to vote at a municipal election held for any other purpose, as to hold that, by the succeeding provision of the section restricting the right of suffrage in municipal elections to determine expenditure of money or assumption of debt to taxpayers in the municipality, it was intended to give the right of suffrage in municipal elections for any other purpose to all qualified electors of the state who shall have resided in the municipality for six months next preceding the election, and it is therefore clear that the application of the rule stated gets us nowhere in arriving at the meaning of these sections of the Constitution.

[2] An act of the Legislature should not be held void by the courts unless it clearly violates some express or necessarily implied provision of the Constitution. Brown v. City of Galveston, 97 Tex. 1, 75 S. W. 495.

In the case of Graham v. City of Greenville, 67 Tex. 63, 2 S. W. 742, it is held that the provision in section 4 of article 6 of the Constitution, that "in all elections by the people the vote shall be by ballot," did not render invalid the act of the Legislature authorizing a vote of the inhabitants of territory adjoining an incorporated city to determine whether the territory should be annexed to the city, to be taken otherwise than by ballot. While this decision is not directly in point, it seems to us that there was much stronger reason for the contention that the statute in that case was invalid than can be advanced in support of appellees' contention in this case. The decision is based upon the theory that the general provisions in the Constitution in regard to elections does not include elections of this kind, and to this extent it supports our conclusions.

In the subsequent case of State v. City of Waxahachie, 81 Tex. 626, 17 S. W. 348, the holding in the Graham Case, supra, was expressly approved and followed.

[3, 4] It is not entirely clear from the conclusions of the trial judge before quoted that he intended to hold that the portion of the statute restricting the right of suffrage to taxpayers was void, but only that portion denying the right of a taxpayer to vote unless his name appeared upon the assessment roll. If this was the holding, the general demurrer should not have been sustained, because the provision requiring the voter's name to appear on the assessment roll was not such an integral part of the statute that its invalidity would destroy the entire statute, and plaintiffs' petition not only alleges that the names of the challenged voters did not appear upon the roll, but that none of them pay taxes on property within the city, "and are not taxpayers, and were not taxpayers when said election was held."

[5] We are, however, of opinion that the provision requiring the names of the voters to appear on the assessment roll is not invalid. This was expressly decided by our Supreme Court in the case of City of Fort Worth v. Davis, 57 Tex. 225, construing a like provision in the statute authorizing of

an election for a school tax. In that case the court says:

"The Constitution prescribes no means of ascertaining the number of taxpaying qualified voters in the city. The duty of doing this, and ·the consequent right of selecting such means and mode of doing it as they deem best, having reference to practicability and convenience, must devolve on the Legislature. This is the express provision of the Constitution in the section authorizing counties and cities on the coast to levy a tax for the construction of sea-walls and breakwaters, 'upon a vote of two-thirds of the taxpayers· therein (to be ascertained as may be provided by law).' Article XI, § 7. From the necessity of the case, a like provision must be implied in the clause we are considering. A reference to the last assessment roll would obviously be open to objection as inaccurate. * * * Absolute accuracy in ascertaining the numbers of property taxpayers who were also qualified voters is manifestly not obtainable. * * * The Legislature have adopted this as under all the circumstances the best test and there are numerous cases which seem to support their authority to do so."

This decision seems to us to be conclusive of this question. The cases of Savage v. Umphries, 118 S. W. 893, and of Solon v. State, 54 Tex. Cr. R. 261, 114 S. W. 349, also support this view of the law.

It follows from these conclusions that the judgment of the trial court should be reversed and the cause remanded, and it has been so ordered.

Reversed and remanded.

GRAVES, J., dissents.

On Rehearing.

PER CURIAM. Rehearing denied.

GRAVES, J. (dissenting). Inability to agree with my Associates in· the holding made in this cause imposes the statutory duty of entering of record this statement of the grounds of that dissent.

Irrespective of the reasons given for it, I think the trial court was correct in sustaining the general demurrer, and that this court should have affirmed its judgment.

It seems to me plain that the qualifications of electors prescribed in section 2 of article 6 of our Constitution, taken along with the provisions of the other sections in that same article, apply to an election of this kind—that is, one to determine whether or not the corporate existence of a town should ,be abolished—and that it was clearly adding something to those qualifications to require as a prerequisite, as article 1079 attempts to do, that one offering to vote must also be a resident taxpayer in such town, as shown by its last assessment roll.

As I read it, the Constitution not only nowhere authorizes, but by necessary implication forbids, the imposing of any such restriction upon voters in an election of this character. It was not one "to determine expenditure of money or assumption of debt," and therefore not within the only class as to which the participants may be restricted to those who pay taxes on property within the town. Section 3, article 6, of the Constitution, quoted in the majority opinion.

The clear implication from this language used in section 3 is that in all other elections the wedding garment of being a taxpayer is not an indispensable prerequisite.

The holding of the majority that section 2 of article 6 was only intended to confer and regulate the right of suffrage in general elections covering the state as a whole is unsupported by cited authority, if not in fact novel. As against it there seems to me to be the direct former pronouncement of this court itself in Warrener v. Lambrecht, 146 S. W. 633, the only prior case, so far as I am aware, involving an interpretation of this particular statute. Vernon's Sayles' Rev. St. 1079, then article 617c. The validity of the statute as against the constitutional objection sustained by the trial court in this suit was not involved, but as one of the grounds upon which its judgment was rested this court expressly held that the qualifications of a voter prescribed in section 2 did apply to an election under this article to abolish the corporate existence of a town, its language being as follows:

"Section 2 of the Constitution, as amended in 1902, prescribing the qualifications of a voter, in addition to the requirement that he shall have resided in the state one year and in the county six months, provided that he must have attained the age of 21 years, be a citizen of the United States (unless of foreign birth, in which event he must have declared his intention to become a citizen of the United States in accordance with the federal naturalization law), and must have paid his poll tax and hold a receipt therefor, showing the same to have been paid before the 1st day of February next preceding the election. We think the proof offered at the trial falls short of showing that the 19 persons possessed all these prescribed qualifications. It may be the fact that each had paid his poll tax for 1910 was sufficient to establish that each was 21 years of age; but the proof was wholly insufficient to show that each was a citizen of the United States, or, if of foreign birth, had, at a proper time before the election, declared his intention to become a citizen, and that he had paid his poll tax before the 1st day of February next preceding the election in question."

Likewise our Supreme Court made the same declaration, applying it generally, when on rehearing in Koy v. Schneider, 221 S. W. at·page 915, in defining the meaning of section 2, it says:

"Which prescribes qualifications of voters in all elections with which that entire article [VI the suffrage article] was intended to deal."

While in that case the court by divided bench held the suffrage article applicable only to what it characterizes as "governmental elections" in contradistinction to "primary elections by political parties," there was no division upon the applicability of section 2 to the kind of an election here involved, for the distinguished Chief Justice, too, in his very able dissenting opinion, 218 S. W. at page 484, thus declared it:

"I maintain that the language of this section is so simple and plain as not to admit of construction or refinement by courts, and that it means, steadily and unfailingly, the qualifications it prescribes shall be possessed by all voters at all public elections in the state which the Legislature has the power to establish and which it may provide by law."

Apart from these direct holdings to that effect, however, the very broad use of the terms "an election," "any election," "in all elections in this state," and "in all elections," as used in sections 2 and 3, as well as the phrases "in all elections by the people," and "voters shall, in all cases," appearing in succeeding sections 4 and 5, unmistakably, it seems to me, indicates that the framers of the Constitution intended the provisions of all these sections to apply to and govern the right of suffrage and the qualifications of voters in at least any and all governmental elections held by virtue of the authority of the people—that is, under a law enacted by the Legislature—whether it affects the state as a whole or only a portion of it or its people.

There is nothing elsewhere in that instrument limiting the meaning of the term "election" as thus used, just as the Supreme Court held there was not in discussing amended section 8 of article 5 in Ashford v. Goodwin, 103 Tex. 491, 131 S. W. 535, Ann. Cas. 1913A, 699. It is inconceivable to assume that the same simple word in the fundamental law, whose terms in their very essence are always broad, general, and intended to be easily understood and liberally interpreted, means one thing at one place and a wholly different one at another.

Now that there was actually held here under and by virtue of the election laws of the state, and in accord with the detailed procedure therein directed, a public "governmental" election is undisputed; indeed, that fact lay at the foundation of the suit and was, in effect, so alleged in the petition. Right there is disclosed the difference—so distinctive as to denude those cases of any bearing upon the question here—between Graham v. City of Greenville, 67 Tex. 63, 2 S. W. 742, and State v. City of Waxahachie, 81 Tex. 626, 17 S. W. 348, cited and relied upon by the majority, and the ruling facts of this case. There was no question of the qualifications of individual voters involved in either of those holdings; on the contrary,

the fact that those participating were legally qualified voters under the laws of the state was expressly recited, and the court simply decided that section 4, art. 6, of the Constitution, did not require public elections to be held to determine whether or not adjoining territories should be annexed to a city—that is, prescribe an exclusive method for the expression thereon of the will of the people affected—and that an act of the Legislature under which that result might be accomplished by another method was not therefore invalid. Unlike the situation in the case at bar, the facts were that no election was held, the choice of the inhabitants of the adjoining territory being evidenced merely by signed petitions directed to the city council. Surely that is a far cry from holding that when, as here, the prescribed details of the procedure for that purpose are followed, and a formal public election for governmental purposes pursuant to the general laws of the state is held, the qualifications enumerated in the Constitution for voters in all elections by the people do not apply to it. Nor, as far as has come to my knowledge, is any such holding by an appellate court in Texas extant.

If the foregoing deductions be maintainable, then our Legislature under all the authorities (Koy v. Schneider, 218 S. W. 480–481; Id., 221 S. W. at page 905 [20]; Solon v. State, 54 Tex. Cr. R. 261, 114 S. W. 349; Cooley's Constitutional Limitation, § 599; 10 A. & E. Ency. Law, 573–576; 15 Cyc. 282; 8 R. C. L. par. 41), had no more power to add a qualification not provided for in section 2 of article 6 than it would have had to take away any one of those that was therein included. That much also being true, how could there still be said to be lacking "a clear and strong conviction of incompatibility"—to use the expression employed in Brown v. Galveston, 97 Tex. 9, 75 S. W. 492—between a statute saying a voter must be a taxpayer and a Constitution which requires nothing of the kind?

If an election of this sort is wholly ungoverned by the Constitution, and the Legislature is accordingly unrestrained by any of its provisions in declaring what shall be the qualification of the participating voters, it undoubtedly had the power to say that they need not possess any of the qualifications mentioned anywhere in the Constitution. To such a doctrine of legislative omnipotence I am unwilling to lend my judicial authority. Suppose, instead of providing in this article 1079 that all legally qualified voters of the state and county, who are resident property taxpayers in a city or town, shall be allowed to vote on the question of dissolving the corporate existence, the Legislature had said that all such resident property taxpayers should be allowed to vote, whether or not they were 21 years old, of sound mind, or

residents of the state and county, or had paid a poll tax; could it then be said that the act was valid?

Without in the least inveighing against what has been said, it might be conceded that, if the Legislature had the power to say that only taxpayers should be allowed to vote in this sort of an election, its authority to further prescribe the rule or method by which that fact might be determined by the officers of the election would not be wanting; for, under the supposition stated, the enactment would not amount to the addition of anything to the constitutional qualifications of electors, but would merely provide a way for determining whether or not those offering to vote possessed them. Such mere regulations by the Legislature of the conditions under which and the manner in which the right to vote shall be exercised, where reasonable, nondiscriminatory, and not in themselves inhibited by the Constitution, have uniformly been upheld. Instances of holdings of that general character are Savage v. Umphries, 118 S. W. 893, and Solon v. State (by the Court of Criminal Appeals) 54 Tex. Cr. R. 261, 114 S. W. 349, cited in the majority opinion.

This protest against the reversal of the trial court's judgment is respectfully, but earnestly, entered.

---

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes