**POWELL et al. v. CITY OF BAIRD et al.**

No. 1960.

Court of Civil Appeals of Texas. Eastland.*

Feb. 24, 1939.

W. E. Martin and Ben L. Cox, both of Abilene, and B. L. Russell, of Baird, for appellants.

Felix Mitchell and L. L. Blackburn, both of Baird, and Scarborough & Ely, of Abilene, for appellees.

*Motion for rehearing pending awaiting answers to certified questions.

GRISSON, Justice.

This is an election contest. The contestants, T. E. Powell, and others, are residents of the City of Baird and were the owners of both real and personal property situated within the City of Baird at all times in question, which property was duly rendered for taxation. They were all qualified voters under the Constitution and laws of Texas, and were qualified to vote in all elections held for any purpose within the City of Baird at all times here in question. The contestees are the City of Baird and its Mayor, Hon. H. Schwartz. On September 8, 1938, the City Council of Baird passed a resolution ordering an election to be held on the 30th day of September, 1938, at which election there was to be submitted the issue whether or not the City Council of Baird would be authorized to issue bonds for the purpose of financing the construction of an electric light and power system for said City. Pursuant to the resolution and order made by the City Council, the election was held on September 30, 1938. At the time of the election, and for many years prior thereto, the City of Baird had by ordinance levied a poll tax upon the citizens of Baird over the age of 21 years, and under the age of 60 years, and had required the payment of a city poll tax by those subject thereto, as a prerequisite to the right to vote in a city election. Such ordinance was in full force and effect on the date of said election; poll taxes were legally levied; there were excepted from the requirement of a city poll tax those classes of persons exempted from payment of poll taxes by virtue of the laws of Texas. A list of the qualified voters who would be permitted to vote at such election, under the rulings of the officials of said city, was prepared and furnished to the election officers. All residents of Baird, subject thereto, who had not paid a city poll tax for the year 1937 were excluded from the list of qualified voters. The election officers and officials of the City of Baird required payment of a city poll tax, by persons subject thereto, for the year 1937, as a prerequisite to the right to vote, and did not permit those subject to payment of a poll tax who had not paid same for the year 1937 to vote at said election. The Baird Star, a newspaper published in said city, on the day of the election published a news item to the effect that only those persons who had paid the City poll tax when due would be permitted to vote in said election, and said newspaper was circulated throughout the City of Baird on the morning of the day of the election. There were living in the City of Baird, and otherwise in all respects qualified to vote at such election, at least 116 persons who would have voted at such election if they had been permitted to vote, but who would not have been permitted to vote at said election if they had offered to vote, because of the fact that they had not paid the City poll tax to the City of Baird for the year 1937. Said 116 persons lived in Baird and were in all things subject to payment of a city poll tax, and were assessed to pay a city poll tax for the year 1937, to the City of Baird, and did not pay it. The foregoing facts were agreed to upon the trial of the case. Subject to the objection, by contestants, that such testimony was incompetent, irrelevant and prejudicial to any issue in this case, and that it was not permissible to prove how any of the 116 persons would have voted, because the exclusion of said 116 persons from voting was the exclusion of a class of voters sufficient in number that they could have changed the result of said election, and that proof as to how they would have voted was not necessary nor permissible, it was agreed that 58 of the 116 persons would have voted for the issuance of said bonds, and 58 would have voted against the issuance of said bonds.

The controlling questions of law presented by the appeal are: (1) Is the requirement of payment of a city poll tax, by those subject thereto, as a prerequisite to the right to vote at said municipal election in contravention of the Constitution of Texas? (2) If the first question should be answered "Yes", then is said election void by virtue of such requirement, although the result was not actually affected thereby?

Article 6, sec. 1, of the Constitution of Texas, as amended in 1932, Vernon's Ann. St.Const. art. 6, § 1, prohibits five classes of persons from voting in Texas, to-wit: (1) Persons under twenty-one years of age; (2) idiots and lunatics; (3) all paupers supported by any county; (4) all persons convicted of any felony, subject to such exceptions as the Legislature may make; (5) all soldiers, marines and seamen, employed in the service of the Army or Navy of the United States. (The amendment adopted in 1932 provided that this

restriction should not apply to officers of the National Guard, nor to retired officers, retired enlisted men, etc.)

Article 6, sec. 2, insofar. as it is here important, provides: "Every person subject to none of the foregoing disqualifications, who shall have attained the age of twenty-one years and who shall be a citizen of the United States and who shall have resided in this State one year next preceding an election and the last six months within the district or county in which such person offers to vote, shall be deemed a qualified ·elector * * * provided further, that any voter who is subject to pay a poll tax *under the laws of the State of Texas* shall have paid said tax before offering to vote at any election in this State * * *."

Article 6, sec. 3, provides: "All qualified electors of the State, as herein described, who shall have resided for six· months immediately preceding an election, within the limits of any city or corporate town, shall have the right to vote for Mayor and all other elective officers; but in all elections to determine the expenditure of money or assumption of debt, only those shall be qualified to vote who pay taxes on property in said city or incorporated town; provided, that *no poll tax for the payment of debts thus incurred, shall be levied upon the persons debarred from voting in relation thereto.*"

Article 2954 is virtually a copy of section 1 of Art. 6, of the Constitution; except that the addition to the Constitution by the amendment of 1932 has not been added to the statute.

Article 2955, insofar as it is here material, provides: "Every person subject to none of the foregoing disqualifications who shall have attained the age of twenty-one years and who shall be a citizen of the United States, and who shall have resided in this State, one year next preceding an election, and the last six months within the district or county in which he or she offers to vote, shall be deemed a qualified elector. * * * *Provided that any voter who is subject to pay a poll tax under the laws of this State or ordinances of any city or town in this State, shall have paid said tax before offering to vote at any election in this State* * * *."

Article 1030, R.S.1925, as amended in 1931, Vernon's Ann.Civ.St. art. 1030, provides: "The City Council shall have power to levy and collect an annual poll tax, not to exceed One ($1.00) Dollar of every inhabitant of said city over the age of twenty-one (21) and under sixty (60) years, those persons exempt by law from paying the State Poll Tax excepted, who is a resident thereof at the time of such annual assessment."

Since Art. 1030 authorizes a city to levy and collect a poll tax, and, since Art. 2955 (Vernon's Tex.Civ.St.1936) qualifies the definition of an elector by providing "that any voter who is subject to pay a poll tax under the laws of this State or *ordinances of any city or town* in this State, shall have paid said tax before offering to vote at any election in this State * * *" the precise question appears to be whether or not the italicized provision of Art. 2955 is in contravention of Art. 6, sec. 2 of the Constitution of Texas, defining an elector, which provision of the Constitution includes the following language: "Provided further, that any voter who is subject to pay a poll tax *under the laws of the State of Texas* shall have paid said tax before offering to vote at any election in this State * * *." Our consideration of the question is limited solely to the authorization of a city to require payment of a city poll tax as a prerequisite to the right to vote in a municipal election.

In the case of Perry v. City of Rockdale, 62 Tex. 451, the Supreme Court of Texas held that under the Constitution the Legislature had the power to authorize a municipal corporation to levy a poll tax. It further held that the Legislature had (by what was then Art. 428 and is now Art. 1030, Vernon's Tex.Civ.St.1936) conferred such power "as fully as the legislature possessed it" on cities of a certain class.

In Morris v. Cummings, 91 Tex. 618, 45 S.W. 383, 384, our Supreme Court was called upon to decide whether or not a town, incorporated under what was then Chapter 11, Title 18, R.S.1895 (now Chap. 11, Title 28, Vernon's Tex.Civ.St.1936), was, by virtue of the provisions of Art. 595, R.S.1895 (now Art. 1146, Vernon's Tex.Civ.St.1936) authorized to levy and collect a poll tax. The court discussed the constitutionality of Art. 595 (R.S.1895) if it should be construed as authorizing the collection of a "town" poll tax, and held that said article, which provided for the levy and collection of an occupation tax and a tax on "persons and property" within the town limits, did not authorize a

town, so organized, to collect a poll tax. It is important to note that the town in question was incorporated under the section of the statute which had reference to "Towns and Villages" and not under the statutes with reference to "Cities and Towns", and that such towns were not authorized by Legislature to collect a poll tax. In arriving at the decision above stated, the court said: "The inference is therefore strong that if it had been intended to authorize the *towns* in this state, organized under the general law, to levy a poll tax, the legislature would have made use of that well-defined term. And, again, the act of 1875, which enlarged the general law for the incorporation of *towns and cities* passed in 1858, while it retained section 8 of the act last named in regard to taxation by towns, *expressly provided that the council of a city should have power to annually assess and collect a poll tax*, not exceeding one dollar, of every male inhabitant of said city over the age of 21, etc. This provision is found in the Revised Statutes of 1879 (article 428) [now article 1030, Vernon's Tex.Civ.St.1936], and in our present Revised Statutes (article 489). It seems that the inference is irresistible that, if it had been intended to confer the power upon *towns* to levy a poll tax, the legislature would have said so in so many words, as they did in reference to *cities* incorporated under the same law."

Thus our Supreme Court, in 1898, decided that a town organized under the provisions of the statute applicable to "Towns and Villages" was not authorized to levy and collect a poll tax, for the simple reason that under the laws of the State of Texas they had not been granted such authority, but that a city incorporated under the provisions of the statutes relating to "Cities and Towns" was authorized by Art. 489, R.S.1895, to levy and collect a city poll tax for the reason that the Legislature of Texas had expressly granted such authority to the cities thus incorporated. No question of the constitutionality of Art. 489, R.S.1895, now Art. 1030, Vernon's Tex. Civ.St.1936, was suggested. The natural inference is that the Supreme Court then had no question of the constitutionality of the statute authorizing a city, so incorporated, to levy and collect a city poll tax.

Said decision was discussed in an opinion by the Attorney General of Texas, in 1918. It was there held, in substance, that a town organized under the provisions of the statute referable to "Towns and Villages" was not authorized to collect a poll tax, but that a city, incorporated under the provisions of the statute referable to "Cities and Towns" (as was the city of Baird), was authorized to require payment of a city poll tax as a condition precedent to the right to vote. See Report of the Attorney General 1916-1918, p. 290 et seq.

In Savage v. Umphries, Tex.Civ.App., 118 S.W. 893, 904, the court discussed and, we think, correctly decided, in effect, the identical question here presented, insofar as it may apply and is limited to municipal elections, in the following language:

"The testimony offered by appellants for the purpose of showing that Ed Guleke, who voted at the election, and whose vote was counted for prohibition, *who had not paid his city poll tax for the year 1906 prior to the 1st of February, 1907, to which he was subject, was an illegal voter,* the exclusion of which is the subject of the twenty-first and twenty-third assignments of error, should have been admitted, for the statute provides that any voter who is subject to pay his poll tax under the laws of the state of Texas, or under the ordinance of any city or town in this state, before he offers to vote at the election shall have paid said tax; for *we cannot believe,* as appellee contends, *that 'the requirement that a voter be compelled to pay a city poll tax is an additional burden to that placed upon him by the Constitution, and is unconstitutional for that reason.'* As has been before shown, the right of suffrage is not a natural right of the citizen, but a franchise dependent upon the law, by which it must be conferred to permit its exercise. It is true that where the Constitution of a state fixes the qualifications, and determines who shall be deemed qualified voters, in direct, positive, and affirmative terms, these qualifications cannot be added to by legislative enactments, yet, *as the constitutional provision in section 2, art. 6,* hereinbefore quoted, *required that 'any voter who is subject to pay a poll tax under the laws of the state of Texas shall have paid the tax before he offers to vote at any election in this state,'* it cannot be said that this qualification is added to by the legislative enactment which requires the payment of a city poll tax by a voter who is subject to its payment; for such tax is required *under the laws of the state of Texas,* though it be a municipal tax, for *no tax can be levied by a city*

*unless it is done under the laws of the state.* McCormick v. Jester, [53 Tex.Civ. App. 306], 115 S.W. 278; People v. Teague, 106 N.C. 576, 11 S.E. 665."

This case has been often cited, apparently with approval by our courts, including our Supreme Court, and by courts of other jurisdictions.

In Linger v. Balfour, Tex.Civ.App., 149 S.W. 795, 809, the law was likewise interpreted, though not discussed, as shown by the following excerpt from the opinion:

"Contestee, by his sixth cross-assignment of error, complains of the action of the court in holding Frank Pylant to be a legal voter, and in not deducting his vote from that cast for contestant, on the ground that he owed a poll tax to the city of Hereford for the year 1909, which he did not pay. The evidence shows that some time prior to the 7th of April, 1908, the city council of Hereford levied a poll tax of one dollar upon all male inhabitants subject to the payment of poll tax and living within the limits of its said city, but we are unable to determine from the evidence whether this voter, either on the 1st day of January, 1909, or at the date of the passage of said ordinance, was living within the city limits or not; and, as the burden was on the contestee to show that this voter was legally subject to such city poll tax, and has failed to make such proof, we indulge the presumption that the court correctly held that he was not subject to such tax and was a legal voter, and properly refused to deduct his vote from the total vote cast for contestant.

\*      \*      \*      \*      \*      \*

"Contestee, under his eighth cross-assignment, complains that the court erred in holding C. L. Poole to be a legal voter, and in not deducting his vote from the total vote cast for contestant, on the ground that he was shown to be subject to the payment of a city poll tax to the city of Amarillo for the year 1909, and did not pay the same. The evidence shows that this voter resided within the city limits of Amarillo on January 1, 1909; that the city levied a poll tax for that year, and that the said voter did not pay said tax; that he was 23 years old. His vote was accepted by the election officers, cast and counted for contestant, and the issue with reference to him is as to whether or not he was exempt from the payment of the

city poll tax on account of being a member of the National Guards. The evidence shows that he was such a member, but does not affirmatively show whether or not the captain or commanding officer of the company to which C. L. Poole belonged complied with the law, in order to exempt him from the payment of the city poll tax. Under this state of the evidence, his vote having been accepted and counted by the officers of the election and held legal by the trial court, we think the presumption in favor of its legality should be indulged, and that the burden is upon the contestee to show by the evidence that his vote was illegal; and, the contestee having failed to discharge this burden, we conclude that the court did not err in holding him a qualified voter."

In Bonham v. Fuchs, Tex.Civ.App., 228 S.W. 1112, 1113, writ refused, the court, in the majority opinion written by Chief Justice Pleasants, said:

"Under appropriate assignments of error appellants challenge the ruling of the trial court sustaining the demurrer, and contend that article 1079, Vernon's Sayles' Statutes [now Art. 1243, Vernon's Tex.Civ.St.1936], prescribing the qualifications of voters at elections held for the purpose of determining whether the corporation of a city or town, incorporated under the general incorporation statute, should be abolished, is not in conflict with sections 2 and 3, art. 6, of the Constitution of this state. The statute cited provides:

"'All persons who are legally qualified voters of the state and county in which any such election is ordered, and are resident property taxpayers in the city or town where such election is to be held, as shown by the last assessment roll of such city or town, shall be entitled to vote at such election.'

"Article 6 of our Constitution, giving the right of suffrage, declares, first, in section 1, what class of persons shall not be permitted to vote in this state; and by sections 2 and 3 confers the right of suffrage, with certain restrictions and exceptions, upon all persons in this state not included in any of the classes named in section 1. Section 2 prescribes the general qualifications of an elector in this state. Section 3 provides:

"'All qualified electors of the state, as herein prescribed, who shall have resided for six months immediately preceding an

election within the limits of any city or corporate town, shall have the right to vote for mayor and all other elective officers; but in all elections to determine expenditure of money or assumption of debt, only those shall be qualified to vote who pay taxes on property in said city or incorporated town.'

"The majority of this court cannot agree with the learned trial judge *that these provisions of the Constitution can be construed as prohibiting the Legislature from prescribing that, in elections held to determine whether the corporation of a city or town should be abolished, only persons who are property taxpayers in the city or town shall be allowed to vote,* nor from further providing the rule by which the election officers are to determine whether the person who offers to vote at such an election is a taxpayer in the city or town.

"Such inhibition is attempted to be read into these provisions of the Constitution by the application of the rule, expressio unius est exclusio alterius. This rule, which is never infallible, and, in the opinion of the writer, is rarely a safe one to follow in constitutional construction, cannot be applied to these provisions of the Constitution.

"*We think that section 3, above quoted, shows upon its face that the makers of the Constitution did not intend by the provision of section 2 of this article to confer and regulate the right of suffrage in municipal elections in cities and towns,* because, if section 2 confers such right, the first clause of section 3, giving the right to all qualified electors of the state having the prescribed residence in the city or town in municipal elections held for selecting municipal officers, was a wholly unnecessary provision, and would not have been incorporated in that section. In addition to this, the use in section 3 of the words 'qualified electors of the state' indicates that the previous section was only intended to confer and regulate the right of suffrage in general elections affecting the state as a whole."

We are of the opinion that the City of Baird was authorized to require payment of a city poll tax, by those subject thereto, as a prerequisite to the right to vote at the municipal election in question. By Art. 1030, Vernon's Tex.Civ.St. 1936, it was specifically authorized to levy and collect a poll tax. By virtue of the provision of Art. 2955, "provided that any voter who is subject to pay a poll tax *under the laws of this State* or *ordinances of any city or town* in this State, shall have paid said tax before offering to vote in any election in this State", it was expressly authorized to require the payment of a city poll tax, as a prerequisite to the right to vote in the election in question. Therefore, unless said statutory provision is in conflict with the Constitution, the City of Baird unquestionably had the right to prohibit those of its citizens, to whom its ordinance was applicable, from voting in said election in the absence of payment of a city poll tax. Careful consideration of the few authorities convinces us that since the collection of a city poll tax is so expressly authorized by legislative enactment, the requirement of payment of a city poll tax as a prerequisite to the right to vote in a municipal election was authorized under that part of sec. 2, Art. 6, of the Constitution, reading: "Provided further, that any voter who is subject to pay a poll tax *under the laws of the State of Texas* shall have paid said tax before offering to vote at any election in this State." So far as we know, the appellate courts of Texas have never passed upon the precise question here presented. In 1934, the Attorney General of Texas held that a city could require payment of a city poll tax as a prerequisite to the right to vote in a municipal election. (See opinions of Attorney General 1932-1934, No. 2945, p. 265). Said opinion has been followed by that department since its rendition. The conclusion stated obviates the necessity of discussion of the other questions presented.

(Italics in the opinion are ours)

The judgment of the district court is affirmed.

FUNDERBURK, Justice (dissenting).

The question, as the writer sees it, completely determinative of the only phase of the case discussed in the majority opinion, is this: Are ordinances of any city or town in this State, as the word "ordinances" is used in R.S.1925, Art. 2955, included in, or synonymous with, the words "laws of the State of Texas" as used in Constitution Art. 6, sec. 2, Vernon's Ann. St., providing that "any voter who is subject to pay a poll tax *under the laws of the State of Texas* shall have paid said tax before offering to vote at any election in

this State"? (Italics ours) There can be no difference of opinion that a city, chartered under the general laws of this State, has the power "to levy and collect an annual poll tax, not to exceed One ($1.00) Dollar of every inhabitant" of such city, with stated exceptions. R.S.1925, Art. 1030. Such power must be exercised by the passage of an ordinance. R.S.1925, Art. 1033.[1]

It must be borne in mind that the question of poll tax payments as a qualification to vote is entirely different from, and wholly independent of, the question of the power of a city or town to levy and assess poll taxes. The power of commissioners' courts and of cities and towns to provide for the levy, assessment and collection of poll taxes, existed long prior to the time that the payment of such taxes was added to the qualifications of voters. As to cities and towns it has existed, at least, since 1875. The requirement of the payment of poll taxes as a qualification of electors was enacted about the year 1902.

The question at issue is believed to be controlled by the proper construction of Constitution, Art. 6, secs. 1, 2, 3 and/or 3a.[2] With unimportant exceptions, Constitution Art. 6, secs. 1, 2, 3, and/or 3a, pre-

---

[1] The subject matter of Art. 1030, was a part of the Acts of 1875 (8 Gammel's Laws, p. 507) the material provisions of which read as follows:

"Sec. 81. The city council shall have power within the city *by ordinance*, to annually levy and collect taxes, not exceeding one per cent., on the assessed value of all real and personal estate and property in the city, not exempt from taxation by the Constitution and laws of the State; provided, that by consent of two-thirds (2-3) of the qualified voters of said city, expressed at an election held for that purpose under the provisions of this act, the city council may levy and collect an additional tax of not exceeding one per cent. upon all such property. (Italics ours)

"Sec. 82. To annually levy and collect a poll tax, not to exceed one dollar, of every male inhabitant of said city over the age of twenty-one years, (idiots and lunatics excepted), who is a resident thereof at the time of such annual assessment."

It thus appears that present Art. 1030 was but a subjoined clause, depending for meaning on section 81, which provided that the grant of power, in both 81 and 82, was to be exercised "by ordinance." Even in the absence of present Art. 1033, which was sec. 86, of said Act of 1875, it is not believed the Legislature, by the slight changes made in subsequent codifications, intended to change the requirement that the power to collect a poll tax could be exercised without the passage of an ordinance so providing. At any rate, whatever the proper interpretation of Art. 2955, it only applies to city poll taxes due under *ordinances* of cities and towns.

[2] Although the question is not of controlling effect in the decision of the question at issue, it is believed that Constitution, Art. 6, sec. 3a (added November 8, 1932) should be construed to have superseded sec. 3. The only provision of said sec. 3 not included with greater detail in sec. 3a reads: "Provided, that no poll tax for the payment of debts thus incurred, shall be levied upon the persons debarred from voting in relation thereto." The meaning of the provision thus quoted is obscure. It certainly does not purport to place a restriction on the appropriation or use of money derived from city poll taxes. It does not purport to be a limitation or qualification on the right of property taxpayers, possessing the other qualifications of electors, to vote in the particular character of elections to which the provision, in terms only, applies. It seems to be a limitation on the power of cities and towns to levy poll taxes under certain circumstances upon certain persons, leaving open the implication of the power to levy it upon other citizens of the same city or town, in apparent conflict with the other constitutional requirement of equality and uniformity.

If sec. 3 were repealed by sec. 3a, the repeal was, of course, by implication. The general rule of repeal by implication is a strict one, applicable only when the later and earlier acts are in necessary conflict. There is, however, an exception, or apparent exception, to such rule. "If a constitutional amendment does not in terms expressly repeal a constitutional provision, yet, if it covers the same subject provided for in such provision, the amendment will be regarded as a substitute for it and as suspending it." 12 C.J. 725, sec. 95. Of course, if there was absolutely no difference in the old and new provisions there would be nothing in the old that could be so suspended. Section 3 applied only to electors in incorporated cities and towns. The new section 3a includes the same with many others and is so comprehensive as, I think, to justify the interpretation that it supersedes section 3.

scribes, inclusively and exclusively, the qualifications of electors in this State. Section 1 names classes of persons not allowed to vote in this State; and authorizes the Legislature to make certain exceptions not here important. Section 2 provides, inclusively, who shall be qualified electors, but by a proviso excepts therefrom "any voter who is subject to pay a poll tax under the laws of the State of Texas" and who shall not have paid same and "hold a receipt showing said poll tax was paid before the first day of February next preceding such election" etc. This does not purport to declare who shall be qualified electors in any particular kind of election. The language is "at any election in this State." That includes all elections held in this State. Unless a city election is included there would exist no warrant for holding that the payment of a state poll tax is required as a qualification to vote in a city election. It, therefore, applies to all elections in this State, just as the language clearly imports, unless the Constitution itself provides exceptions. No proposition is better settled than that "The Legislature has no power or authority to require other qualifications than those, for voting, provided in the Constitution." Wendover v. Tobin, Tex.Civ.App., 261 S. W. 434, 438; Texas Power & Light Co. v. Brownwood Public Ser. Co. et al., Tex. Civ.App., 111 S.W.2d 1225; McCutcheon v. Wozencraft, 116 Tex. 440, 294 S.W. 1105; Cameron v. Connally, 117 Tex. 159, 299 S.W. 221; Koy v. Schneider, 110 Tex. 369, 377, 218 S.W. 479, 221 S.W. 880; Solon v. State, 54 Tex.Cr.R. 261, 114 S.W. 349; Ramsay v. Wilhelm, Tex.Civ.App., 52 S.W.2d 757; 12 C.J. sec. 169, p. 751.

The Constitution having declared in said section 2 that, subject to the exclusions provided in section 1, every person "who shall have attained the age of twenty-one years and who shall be a citizen of the United States and who shall have resided in this State one year next preceding an election and the last six months within the district or county in which such person offers to vote, shall be deemed a qualified elector," such provision, as said before, is both inclusive and exclusive of all qualifications of voters, save and except only such others, if any, as are provided in the Constitution itself.

There are some exceptions so otherwise provided. One is applicable to all elec-

tions; and that is the provision that "Any voter who is subject to pay a poll tax under the laws of the State of Texas shall have paid said tax" (and have evidence of such payment, in the manner prescribed). Another applies only to elections held by "any county, or any number of counties, or any political sub-division of the State, or any political sub-division of a county, or any defined district now or hereafter to be described and defined within the State and which may or may not include towns, villages or municipal corporations, or *any city, town or village,* for the purpose of issuing bonds or otherwise lending credit or expending money or assuming any debt." (Italics ours) Const. Art. 6, sec. 3a. As applied to any election of the character so described, section 3a prescribes the additional and further qualification to those provided in section 2 that "only qualified electors *who own taxable property* in the State, county, political sub-division, district, city, town or village where such election is held, and who have duly rendered the same for taxation shall be qualified to vote." (Italics ours) Id. It cannot be seriously argued, I think, that there is thus prescribed any other or additional qualification than that of the ownership and rendition of property. Constitutional provisions, unlike some statutory provisions, are at once both enabling and restricting. It is a rule of constitutional construction "that when the Constitution defines the circumstances under which a right (such we interpolate as the right to vote) may be exercised, or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition * * *." Cooley, Constitutional Limitations, p. 99, 7th Ed. The language of the Constitution, under the rule, clearly implies the exclusion of the payment of a city poll tax as a part of the qualifications of an elector to vote in a city election.

Hence, it would seem the proposition is incontrovertible that if the Legislature has the power to prescribe, as a part of the qualifications of an elector, *in any election,* that he have paid a city poll tax and hold a receipt for same, such power must exist only because of the fact that an ordinance of a city or town is a law of the State of Texas, within the meaning of said constitutional provision.

At least since the time of the Attorney General's opinion, referred to in the ma-

jority opinion, it seems to be generally recognized and conceded that the payment of a city poll tax cannot be imposed as a qualification of an elector in general elections, other than elections held in a city or town. But, I see no escape from the conclusion that if a city poll tax, authorized by an ordinance of a city, is thereby authorized by a law of the State of Texas, the payment of such a city poll tax will be essential to qualify as an elector in any election. The Constitution having made no distinction, the Legislature would be just as powerless to do so as it would to prescribe qualifications additional to those prescribed by the Constitution or to declare exceptions· to those prescribed by the Constitution. In truth, that is just what it would be doing.

In said opinion of the Attorney General, it is said: "that the statutory requirement [R.S.1925 Art. 2955] for the payment of a poll tax levied by the 'ordinances of any city or town in this State' was added to the constitutional requirement for the payment of poll taxes levied 'under the laws of the State of Texas' not by the Legislature first construing section 2 of Art. 6, but by a subsequent Legislature.

*"It must be conceded there is a vast difference between the constitutional guaranty of a right to vote upon the payment of a poll tax under the laws of the State of Texas and the statutory requirement not only of that tax, but in addition thereto, a receipt showing the payment of any poll tax levied under the 'ordinances of any city or town in this State' as a prerequisite to voting in State and county elections."* (Italics ours)

In so saying, it seems to me the Attorney General admitted the nonexistence of the only possible basis of distinction between the qualifications of an elector in State and county elections upon the one hand, and city elections upon the other, with reference to the requirement of the payment of a city poll tax. The opinion, so far as I can see, points out no other possible basis of distinction, authorized by the Constitution wherein it must be found, if it exists. Manifestly no effect can be given to the Act of the Legislature as a legislative construction of Constitution, Art. 6, secs. 2 or 3. The Legislature in adding the words "or ordinances of any city or town in this State" to the requirement, in almost the identical words of the Consti-

tution, and certainly identical in meaning, namely, "under the laws of this State", thereby seems to have construed "ordinances" as something different from "the laws of this State." Otherwise, the added language could serve no purpose, but, on the contrary, could only confuse the expression of the legislative intent, if their full intent was already expressed in substantially the language of the Constitution. There is the implication of something added to the constitutional provision.

It may be admitted that in a special sense an ordinance of a city or town, particularly, a city or town chartered under the general laws, may not inaptly be referred to as a law of the State of Texas. Was it in such a sense that the Constitution required, as a qualification of an elector, the payment of poll taxes which he was subject to pay "under the laws of the State of Texas"? If so, as already said, the elector would not be qualified to vote in any election without a receipt for the payment of a city poll tax, where such poll tax was due. That consideration, of course, does not conclude the question. It is only persuasive because of the generally accepted view that the payment of city poll taxes is not required as a qualification to vote in state and county elections.

In Vosburg v. McCrary, 77 Tex. 568, 14 S.W. 195, 196, it is said: "Ordinances, when authorized by the charter, are but municipal laws, intended to regulate and provide for the orderly exercise· of powers conferred by the charter." The enactment of ordinances is the exercise of legislative power. 30 Tex.Jur. 154, page 280. As further said by the same authority: "While an ordinance is not a law in one sense of the word, and does not come within the constitutional provision requiring notice of an intention to apply for the passage of a local or special law, it is a local law, emanating from legislative authority and operative within its limited sphere as effectively as a general law of the sovereignty." Id. When the governing body of a city or town acts directly under authority of a law of the State of Texas, an ordinance is not necessary. "In the absence of any provision to the contrary in the· charter or statute, the governing body may enact a valid law in the form of a resolution, but it may not adopt that mode of making laws where the power which created it has commanded that it shall legis-

late in a different form." 30 Tex.Jur. 282, sec. 156; City of San Antonio v. Micklejohn, 89 Tex. 79, 33 S.W. 735.

The Constitution, in several places, makes other references to laws in such a way as clearly not to include ordinances of a city or town. For instance, Art. 3, sec. 36, in prohibiting any law to be revived or amended by reference to its title, has no reference to an ordinance of a city. Ex Parte Parr, 82 Tex.Cr.R. 525, 200 S.W. 404. It cannot be doubted that Art. 11, sec. 4 of the Constitution, in requiring cities and towns of five thousand population or less to be chartered alone by general law, has no reference to an ordinance of a city or town. Again, sec. 5, Art. 11, in providing, with reference to home rule cities, that they may "levy, assess and collect such taxes as may be authorized by law or by their charters," etc., could not reasonably be construed as using law in the sense of ordinances, since it makes a distinction between law and the charter under which ordinances must be authorized, if at all. Constitution, Art. 3, sec. 29, in prescribing the enacting clause for all laws, clearly has no reference to city ordinances. If so, then R.S.1925, Art. 1012, in making a different provision as to ordinances would be unconstitutional. The provision of sec. 30 of that same article, that no law shall be passed except by bill, cannot be contended as including city ordinances. The prime duty which the Constitution imposes upon the Governor of the State by Art. 4, sec. 10, that he shall cause the laws to be faithfully executed certainly, it is believed, imposes no duty upon the governor to execute city ordinances.

Added to all the foregoing considerations, is the operation of the principle of liberal construction in favor of the right of suffrage as expressly granted by the Constitution. Even if the question were doubtful there is at least a sufficient lack of certainty that city ordinances were by intention included in the laws of the State to require that the doubt be resolved in the favor of the right of suffrage.

It is the opinion of the writer that the clause of R.S.1925, Art. 2955, "or ordinances of any city or town in this State" was in excess of constitutional authority and that the Legislature is without authority to prescribe as a condition to the qualification of electors the payment of a city poll tax.